1

2

3

4                                                        Honorable Judge Robert S. Lasnik

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9  FLYPAPER DISTRIBUTION, LLC,              )
                                           )
10            Plaintiff,                    )    Civil Case No. 13-00063 RAJ-RSL
                                           )
11     v.                                   )    PLAINTIFF'S RESPONSE TO ORDER
                                           )    TO SHOW CAUSE
12  DOES 1-19                               )
                                           )
13            Defendants.                   )
    _____    )

14

I.  <u>INTRODUCTION</u>

15

16        On May 9th, 2013, the court issued an Order to Show Cause in the above-captioned cases.

17  The court ordered Plaintiff Flypaper Distribution, LLC (hereinafter to be known as Flypaper) to

18  (1) show cause why the above captioned matters should not be dismissed as to all Defendants

19  other than Doe 1 in each case for improper joinder and requested that (2) the Plaintiff provide

20  supplemental information regarding Plaintiffs copyright, members and stakeholders (exhibit 1)

21  along with a summary and documentation of contact with alleged Doe's (exhibit 4) associated

22  with these cases.  Plaintiff has provided the documentation requested and responds that the cases

23  should not be dismissed for improper joinder.  Plaintiff further recognizes the court's concern

24
    Plaintiff's Response to Order to Show Cause                    Frontier Law Group, PLLC
    13-00063 RAJ-RSL                                               1001 4th Ave, Suite 3200
                                                                   Seattle, WA 98154
                                                                   Office: 206-682-7975

with respect to potential litigation abuse. As such, Plaintiff reviews the legal and factual basis for joinder and the absence of any bad faith or nefarious conduct in the instant cases.

## II. <u>BACKGROUND</u>

In the ever changing and evolving digital age that we live in, the plague of peer-to-peer copyright infringement such as complained of by Plaintiff is a serious issue[1] and continues to be a problem as the activity is on the rise nationwide.[2]  Indeed, the United States Congress, in direct response to the growing use of peer-to-peer technology to commit piracy, increased the statutory penalties from $100,000 to $150,000. 17 U.S.C. § 504(c).  Plaintiff has suffered great harm due to infringements committed by thousands of residents in the Western District of Washington and had no option but to file suit to prevent the further widespread theft of its copyright "While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[3]

At the same time there is a permissive culture and a growing community which mocks copyright enforcement; as noted by Senator Levin, "many participants seem to consider it equivalent to jaywalking – illegal but no big deal." Testimony from *Privacy and Piracy*, *supra* fn. 1. BitTorrent sites which profit from this culture, such as The Pirate Bay, openly flaunt copyright violations by posting letters from rights holders and The Pirate Bay's defiant responses which are replete with profanity (exhibit 6, Dec. Counsel ¶ 10 (exhibit 2).  Online web pages and related communities have organized to distribute form motions to quash and to outline strategies

---

[1]  *Privacy and Piracy:* The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcommittee on Investigations of the Sen. Comm. On Governmental Affairs, 108th Cong., 1st Sess. 10 (2003).
[2]  See Google Tackles Piracy By Removing Millions of URLS  http://news.cnet.com/8301-1023_3-57441333-93/google-tackles-piracy-by-removing-millions-of-urls/#postComments and Google Transparency Report http://www.google.com/transparencyreport/removals/copyright/
[3]  <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at</u> http://www.copyright.gov/docs/regstat090903.html

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1    which go beyond legitimate defenses and into the area of obstructing enforcement. The current

2    "cookie-cutter" defense is claiming one's password secured Wi-Fi has been "hacked."

3        It is true that there is a growing number of enforcement suits across the county, but that

4    should be expected when estimates indicate BitTorrent now has more users than Hulu® and

5    Netflix® combined.[4]  This increase in litigation is not Plaintiff driven, but is driven by infringers.

6    Due to some fundamental logistics and the often misplaced perception that internet activity is

7    somehow immune from repercussions, the whole system of enforcement and opposition has

8    become so reactionary that filings often appear on the docket without a logical relation to the

9    matter before the court.  These filings are often based on supposition, anecdotes and other cases

10   filed with other facts.  In this context, Plaintiff Flypaper seeks to enforce its rights and stem the

11   continuing harm which is perpetrated against it by thousands of infringers in the most efficient

12   and fair manner in order to promote judicial economy by joining multiple Defendants.

13       The several complaints filed in this case include discussion on joinder by which Flypaper

14   notes: (1) that Flypaper's rights to relief ultimately arise from the same series of transactions and

15   occurrences; (2) that the complaint raises questions of law and fact common to all Defendants;

16   (3) the time period of infringement by all Defendants provides for continuous seeding and

17   distributing of the movie long after it has downloaded and (4) that permissive joinder permits a

18   more efficient management of Flypaper's claims which would reduce costs to Flypaper and the

19   Defendants and which would reduce costs and burdens on the court and support judicial

20   economy.

21       Motions to expedite discovery were granted by the Court on February 12, 2013 permitting

22   Flypaper to request via civil subpoena subscriber information from Internet Service Providers

23

24   _____
[4] http://www.fastcompany.com/1714001/bittorrent-has-more-users-netflix-and-hulu-combined-and-doubled

1    (hereinafter to be known as "ISPs"). Pursuant to the Order, Flypaper began serving the civil

2    subpoenas on the ISPs.  Suffice it to say, there were complications with obtaining subscriber

3    information. Specifically, the amount of time required by the several ISPs to comply with notice

4    requirements and respond to Flypaper's subpoenas has been more than originally anticipated.

5    (Dec.Counsel, ¶5, exhibit 2).  Indeed, contact with alleged Doe Defendants has been minimal to

6    date in the scope of all cases filed to date by the Plaintiff.  (Dec.Counsel, ¶¶ 6-8, exhibit 2)

7            On May 9, 2013, prior to the majority of the subpoena responses, the Court issued an

8    Order to Show Cause, quashing subpoena's originally submitted in this case. Plaintiff herein

9    responds specifically to the Order to Show Cause.

## III. JOINDER IS PROPER

11        Fed. R. Civ. P. 20 permits joinder when Plaintiffs "assert any right to relief jointly, severally,

12   or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

13   transactions or occurrences; and any question of law or fact common to all Plaintiffs will arise in

14   the action."  Rule 20(a) not only permits permissive joinder when there is the same transaction or

15   occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or

16   occurrences" or (b) joint or several liability.   Plaintiff has done both here and respectfully

17   requests this Court to rule in line with other jurisdictions that have found joinder appropriate in

18   copyright infringement BitTorrent actions.

19        A.    **The Infringement Occurred Through a Series of Transactions**

20           For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to

21   be proper when there is something other than a direct transaction.  "Series" has been interpreted

22   by Circuit Courts to mean a "logically related" fact pattern.

23           [A]ll 'logically related' events entitling a person to institute a legal action against
             another generally are regarded as comprising a transaction or occurrence. The

24

Plaintiff's Response to Order to Show Cause                    Frontier Law Group, PLLC
13-00063 RAJ-RSL                                               1001 4th Ave, Suite 3200
                                                              Seattle, WA 98154
                                                              Office: 206-682-7975

analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary. <u>Mosley v. Gen. Motors Corp.</u>, 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expending substantial effort to understand the allegations in the complaint and the applicable law.  This point of view was adopted very recently by Judge Hluchaniuk in <u>Malibu Media v. John Does 1-30</u>, Civ. A. 12-13312, Doc. 61, (E.D. Mich. May 16, 2013).  Judge Randon summarized the Plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie. By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred. <u>Patrick Collins, Inc. v. John Does 1-21</u>, Civ.A. 11-15232, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012).

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

Significantly, Judge Randon then explained through the force of clear deductive logic that each Defendant obtained the piece of Plaintiff's movie in one of four ways all of which relate directly back to one individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:  1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder. In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP. Id.

Having limited the universe to four possibilities the court correctly concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm. Id.

### i.    **The Supreme Court Encourages Joinder**

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

In United States v. Mississippi, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six Defendants, election registrars of six different counties, was proper because the

Plaintiff's Response to Order to Show Cause
13-00063 RAJ-RSL

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. Id. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as Defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure. Id. at 142.

Indeed, the Supreme Court held all of the Defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie. The Defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. Just as it was not alleged in United States v. Mississippi that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

### B.  There Are Common Issues of Fact and Law

1     Rule 20(a)(2)(B) requires the Plaintiffs' claims against the putative Defendants to contain

2   a common question of law or fact. The Honorable Judge Tharp of the Northern District of

3   Illinois, issued an opinion stating that joinder was proper because the Plaintiff "allege[d] in its

4   complaint that the Defendants participated in the swarm simultaneously and that it observed the

5   Defendants transferring data from the Video between themselves."   Sunlust Pictures, LLC v.

6   Does 1-75, 12 C 1546, 2012 WL 3717768 at *4 (N.D. Ill. Aug. 27, 2012).  Judge Tharp also

7   found that the claims against the Doe Defendants clearly contained common questions of law

8   and fact.

9         As to the second requirement for joinder, this lawsuit appears to involve
          questions of law and fact common to all Defendants, including whether Sunlust
10         is a proper copyright holder, whether violations of the Copyright Act have
          occurred, and whether entering a BitTorrent swarm constitutes willful copyright
11         infringement . . . Rule 20 requires only that "any question of law or fact [be]
          common to all Defendants," not that *every* question of law or fact be common . .
12         . Accordingly, joinder is proper here, and the Court denies Doe's motion to sever
          for improper joinder. Id.

13        Likewise, all of the Doe Defendants in this case participated in the same swarm.

14  Similar cases in other districts have held the same. "The Plaintiff meets this requirement.

15  In each case, the Plaintiff will have to establish against each putative Defendant the

16  same legal claims concerning the validity of the copyrights in the movies at issue and

17  the infringement of the exclusive rights reserved to the Plaintiffs as copyright holders."

18  Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla.

19  Apr. 12, 2012).  The "factual issues related to how BitTorrent works and the methods

20  used by Plaintiffs to investigate, uncover and collect evidence about the infringing

21  activity will be essentially identical for each putative Defendant."   Call of the Wild

22  Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

23

24

Plaintiff's Response to Order to Show Cause
13-00063 RAJ-RSL

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

"Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws.  Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied." <u>Malibu Media, LLC v. John Does 1-15</u>, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).  The fact that each Doe Defendant may later assert "individual defenses that 'differ wildly'… does not mean that joinder is improper." <u>Id.</u>   Therefore, the element of "common questions of law or fact is easily met because the claims asserted against each John Doe Defendant are identical." <u>W. Coast Productions, Inc. v. Does 1-5829</u>, 275 F.R.D. 9, 16 (D. D.C. 2011). Because Plaintiff's complaint satisfies the requirements of Rule 20, severance should not occur.

**C.  <u>The Time Period For Infringement</u>**

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time.  As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder. <u>Patrick Collins, Inc. v. John Does 1-21</u>, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012).

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1    Here, Plaintiff's investigator in a sworn declaration stated that he received a piece of the

2    movie from the Defendant's IP when they were allegedly distributing it to others. (*See* Dec. of

3    Darrent M. Griffin, filed with Plaintiff's motion for early discovery and Supplemental Dec. of

4    Darren M. Griffin, exhibit 3).

5        The Southern District of New York in recognizing that the concept of joinder is adaptable to

6    changing technological landscapes impacting the complexity of lawsuits stated, "[w]hile the

7    period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder

8    must be able to adapt to the technologies of our time." Malibu Media, LLC v. John Does 1-5, 12

9    CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012).   The Michigan Court explained

10   that time constraints should not impact that the infringements occurred through a series of

11   transactions.   "[T]he law of joinder does not have as a precondition that there be temporal

12   distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in

13   the same series of uploads and downloads in the same swarm."   Patrick Collins, Inc. v. John

14   Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

15       **D.  Joinder Promotes Judicial Efficiency**

16       Joinder of the Defendants creates judicial efficiency, particularly at this stage of the litigation

17   process and is beneficial to the Doe's in this case.  "[J]oinder at this stage is . . . in the interest of

18   convenience and judicial economy [and] does not create any unnecessary delay nor does it

19   prejudice any party. Rather, severance is more likely to cause delays and prejudice [Plaintiff] and

20   future named Defendants alike."  First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 252-

21   53 (N.D. Ill. 2011).  The Eastern District of Pennsylvania has addressed this issue and stated,

22   "Consolidating early discovery for the purpose of determining the scope of claims and defenses

23   will foster judicial economy."  Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL

24

Plaintiff's Response to Order to Show Cause
13-00063 RAJ-RSL

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1  1019067 (E.D. Pa. Mar. 26, 2012).  Allowing permissive joinder, at least for the initial stages of

2  these cases, allows them to be managed in an economical and efficient manner for all parties,

3  including the court, Plaintiff, and notably the Defendants.    "The potential case management

4  issues are speculative and should be addressed when, and if, they arise. Trading the uncertainty

5  of possible problems from multiple defenses for the certainty of multiple lawsuits does not make

6  practical sense, at this point, and seems contrary to the potential economies Rule 20 hopes to

7  achieve. See e.g., Voltage Pictures, LLC v. Does 1-43, 2013 WL 1874862, *4 (N.D. Ohio 2013)

8  (Court concluded that, at the preliminary stage of litigation, the Plaintiff pleaded sufficient facts

9  to support permissive joinder, and finding that a "wait and see" approach was appropriate as to

10  whether the Defendants offered unique defenses, requiring "mini-trials.")." Malibu Media v.

11  John Does 1-30, Civ. A. 12-13312, Doc. 61, (E.D. Mich. May 16, 2013).

12        With respect to the benefits the Plaintiff received, that is admitted.  A single consolidated

13  case, results in more efficient management of paperwork and an obvious financial savings.  With

14  respect to the Defendants, what joinder permits is for Plaintiff to manage cases at a reduced cost

15  and to accept settlements in lesser amounts, in particular as costs and fees for willful

16  infringement are properly assessed against Defendants.  If Plaintiff was forced to proceed against

17  Defendants individually, without a doubt costs and fees would be higher and settlements would

18  be higher.  The burden on the Court to manage hundreds of individual lawsuits would far exceed

19  the amount of fee's that would be paid to the court in filing fees to manage the cases. Finally, it

20  should be noted that Plaintiff does not seek to pursue everyone who has unlawfully downloaded

21  and distributed its movie. That is wholly unnecessary and not Plaintiff's objective.  These

22  lawsuits represent no more than 20% of those infringing Plaintiff's work (exhibit 3 ¶39)

23  Plaintiff's purpose is to make it known to habitual infringers that stealing movies is wrong and

24

Plaintiff's Response to Order to Show Cause          Frontier Law Group, PLLC
13-00063 RAJ-RSL                                       1001 4th Ave, Suite 3200
                                                       Seattle, WA 98154
                                                       Office: 206-682-7975

using peer to peer technologies to acquire and distribute content cannot be accomplished with impunity. If joinder is not permissible then Plaintiff will be hindered by an insurmountable administrative and cost obstacle. In effect, Plaintiff will have a right without a remedy.  In the event of severance, Plaintiff estimates it will be able to afford to make enquiries with regards to more than 3% of the infringements taking place in this District. This will result in no more than 50 individual lawsuits per month in the Western District of Washington for this movie. Plaintiff fears this will not be a sufficient number to deter continued infringement of this movie (Dec.Counsel, ¶ 13, exhibit 2).  Furthermore, the financial strain and impact on already limited Court resources is not practical nor desirable.

**E.  Joinder is not Being Used to Wrest Improvident Settlements From Pro Se Litigants**

Plaintiff has not engaged in any alleged abusive conduct (exhibit 4; communications with alleged Defendants filed under seal and Amended corporate disclosures and corporate docs) and should not be automatically held responsible for alleged abuses by others in the industry.  The Plaintiff is intent on using joinder to find those responsible for the infringement of Plaintiff's intellectual property and has taken measures to allow individuals contacted by their ISP's to provide documentation of their professed innocence which would result in their dismissal from the case with prejudice. (Dec.Counsel, ¶7. Exhibit 2).  At no time has Plaintiff intended to make any threats to individuals associated with these cases and views the filing of these cases as an educational tool to help those affected understand the seriousness of copyright infringement and how it can be avoided in the future either by securing an internet connection or explaining to individuals that downloading off of websites such as The Pirate Bay or like sites is considered copyright infringement and should not be utilized on future occasions. (Dec.Counsel, ¶¶ 6-8, exhibit 2).

Plaintiff's Response to Order to Show Cause
13-00063 RAJ-RSL

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

1    Plaintiff certainly understands the Court's concern in light of <u>Ingenuity 13 LLC v. John Doe</u>,

2    No. 2:12-cv-9333-ODW(JCx) (C.D. Cal. May 6, 2013) and other such cases, however the

3    Plaintiff in the cases at bar is a legitimate film company involved in mainstream media as

4    documented in exhibit three and their sole purpose is to protect their copyrights from infringers

5    moving forward.  This is distinguished from Ingenuity 13, LLC in which Plaintiff's Principals

6    created shell companies whose sole purpose was to enforce the copyrights of pornographic films.

7    Further, since the film content involved in <u>Id</u>. was of pornographic nature, the Plaintiffs allegedly

8    used the threat of embarrassment to coerce settlements and fraudulent copyright assignments to

9    prosecute their claims.  In the Plaintiff's cases there are no intended threats of embarrassment,

10   just the mere education of individuals who may find themselves on the receiving end of a letter

11   from their ISP and a chance for a Doe Defendant to take responsibility if they believe they are at

12   fault, which makes Plaintiff whole and covers costs of enforcing copyrights. (Dec.Counsel, ¶¶ 6-

13   8, exhibit 2).  Additionally Plaintiff is not the producer of pornographic movies. Its film is

14   available to purchase through mainstream distribution outlets such as local video outlets. It is a

15   movie that families and friends may sit together, watch and enjoy. There is a substantial

16   difference in equities in this regard compared to pornographic movies. Mainstream movies such

17   as Plaintiff's take many months (sometimes years) to plan and produce. They involve the

18   combined effort of skilled professionals from the creative industries. The rampant theft of

19   Plaintiff's movies has a direct effect on people such as sound engineers, writers and cameramen

20   who work tirelessly to produce great movies. These are not film studios or wealthy actors and

21   actresses found on the red carpet at premieres and film festivals. They are ordinary individuals

22   and many of them earn an average salary. When piracy occurs and goes undeterred, there is less

23   money available for reinvestment which leads to fewer movies being produced. This results in

24

Plaintiff's Response to Order to Show Cause                          Frontier Law Group, PLLC
13-00063 RAJ-RSL                                                     1001 4th Ave, Suite 3200
                                                                     Seattle, WA 98154
                                                                     Office: 206-682-7975

1    fewer jobs and affects the economy as a whole. Piracy is not a victimless crime and lawsuits such

2    as this are the only effective remedy available to Plaintiff.

3                    **IV. <u>SUMMARY OF COMMUNICATION WITH DOES</u>**

4            Once the subpoenas for early discovery were granted, Plaintiff immediately served

5    the subpoenas asking for ISP subscriber information on the various ISP's. (Dec.Counsel, ¶ 3,

6    exhibit 2) Comcast and Century Link, the two largest ISP providers in Western Washington were

7    responsive and Century Link has provided data in several cases, while Comcast, the largest

8    provider, has stated that data in some cases was not going to be delivered until June 20th.  The

9    two other major ISP's Frontier Communications and Wave Broadband have not provided any

10   data at this time, nor have they stated when compliance with the subpoenas was to occur.

11   (Dec.Counsel, ¶5, exhibit 2).  Once Century Link and Comcast received the subpoenas, they

12   began notifying their subscribers of the various copyright infringement cases which in turn

13   triggered a wave of phone calls and questions from alleged doe Defendants even though they

14   have not been named as parties in these cases.

15       When a subscriber called Plaintiff to inquire about the ISP letter, the subscriber was told of

16   the movie allegedly downloaded, their right to contact their own attorney, their right to file a

17   motion to quash and directed to an educational FAQ website[5] to educate themselves about

18   copyright infringement and help them make a decision on what action to take next.  Often times

19   Doe Defendants were directed to the King County Bar Association or other legal aid offices so

20   that they could obtain legal assistance.  At no point were doe Defendants ever threatened,

21   abused, or coerced to settle their cases. (Dec.Counsel, ¶¶ 6-8, exhibit 2).  Various times after

22   talking with other attorneys or doing their own research the doe Defendants would call up and

23

24   _____
     [5] www.frontierlawgroup.wordpress.com
     Plaintiff's Response to Order to Show Cause                              Frontier Law Group, PLLC
     13-00063 RAJ-RSL                                                         1001 4th Ave, Suite 3200
                                                                              Seattle, WA 98154
                                                                              Office: 206-682-7975

1  ask to settle their case as they did not wish to be a party in the case moving forward.  At no point

2  were Doe Defendants contacted by phone unless Plaintiff was returning a phone call and any

3  demand letters that were sent out were minimal as Plaintiff has not received or had a chance to

4  process data that has been received on Doe Defendants.  (Dec.Counsel, ¶¶ 6-8, exhibit 2)

5  Further Doe Defendants were told they would be dismissed from the case if they could provide

6  evidence or some documentation that confirmed they were not the party responsible for the

7  infringement or they could identify and sign a declaration stating that there was another party

8  responsible for the infringement.   (Dec.Counsel, ¶ 7, exhibit 2).

9       It is not the Plaintiff's intent to sue and harass innocent parties however, Plaintiff does need

10  to seek redress against those responsible for the infringement.  If a party calls up and can identify

11  the infringer even if they are not the party responsible, Plaintiff will seek to pursue action against

12  that party if substantial documentation is presented.  At this time no parties have been named as

13  possible party's to the cases as Plaintiff is still awaiting data and is conducting discovery to

14  determine who they may want to pursue as a named party. (Dec.Counsel, ¶5, exhibit 2).  Finally,

15  for those individuals that have chosen to settle their case or provided documentation that they are

16  not the party responsible for infringement, they are awaiting to be dismissed from the cases as

17  soon as time will allow and the stay is lifted by the Court.

## V. <u>CONCLUSION</u>

18  
19       For the foregoing reasons, as well as for the reasons, Plaintiff respectfully requests that the

20  Court allow the cases to continue as filed and not sever the cases into individual cases at this

21  time as joinder is proper.

22  
23  
24  
Plaintiff's Response to Order to Show Cause                         Frontier Law Group, PLLC
13-00063 RAJ-RSL                                                    1001 4th Ave, Suite 3200
                                                                   Seattle, WA 98154
                                                                   Office: 206-682-7975

1    Dated: May 31, 2013                          Respectfully submitted,
                                                  FRONTIER LAW GROUP, PLLC
2
                                          By:     /s/ Richard J. Symmes
3                                                 Richard J. Symmes, Esq. WSBA #41475
                                                  1001 4th Ave, #3200
4                                                 Seattle, WA 98154
                                                  Tel:  (206) 682-7975
5                                                 Fax:  (206) 424-4691
                                                  Email:  Richard@symmeslaw.com
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff's Response to Order to Show Cause                              Frontier Law Group, PLLC
13-00063 RAJ-RSL                                                         1001 4th Ave, Suite 3200
                                                                        Seattle, WA 98154
                                                                        Office: 206-682-7975

1

2
## CERTIFICATE OF SERVICE

3
      I hereby certify that on May 31, 2013, I electronically filed this document with the Clerk

4
of the Court using the CM/ECF electronic filing, which will provide notice to all counsel of
record herein.

5

6
                    */s/ Richard J. Symmes*        

7
                    Richard J. Symmes, Esq. WSBA #41475
Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff's Response to Order to Show Cause
13-00063 RAJ-RSL

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975