UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FLYPAPER DISTRIBUTION, LLC,

    Plaintiff,

  v.

DOES 1 - 19,

    Defendants.

Case No. C13-0063RAJ-RSL

ORDER OF DISMISSAL

       This action was filed on January 9, 2013. Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "Flypaper." Plaintiff asserts direct and contributory copyright infringement claims against each Doe defendant. On February 12, 2013, the Court granted plaintiff's motion to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address. None of the defendants was timely served (see Fed. R. Civ. P. 4(m)), nor has plaintiff amended its complaint to identify any of the Doe defendants.

       After the matter had been pending for four months and the Court had heard from a number of putative defendants in other related cases, the Court issued an order to show cause acknowledging concerns regarding the propriety of joinder and the possibility that plaintiff was using the judicial authority of the United States to wrest improvident settlements from *pro se* litigants under threat of huge statutory penalties. The Court

ORDER OF DISMISSAL - 1

stayed the above-captioned matter and required plaintiff to provide copies of all written communications with the owners of the IP addresses, summaries of all oral communications with those individuals, proof of Flypaper Distribution's ownership of the copyright at issue, and the identification of all members/owners/stakeholders of Foresight Unlimited, LLC.  In addition, the Court ordered plaintiff to show cause why the case should not be dismissed for improper joinder and/or for failure to timely serve.  Having reviewed plaintiff's response, the Court finds as follows:

**A.  Joinder**

Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements for the permissive joinder of defendants.  First, the right to relief against defendants must arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common to all defendants.  Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of the complaint as true and considering the declarations of plaintiff's investigator, the Court finds that these requirements are easily met.  As to each separate lawsuit, plaintiff's investigator found that a user of the IP addresses identified in the action possessed a pirated copy of "Flypaper," that each copy was a reproduction of the same original, and that the user offered for download a portion of its pirated copy at the investigator's request, contributing to a fully-playable version of the movie.  Depending on how one characterizes this activity, plaintiff's claims for relief arise from either the same transaction (*i.e.*, its investigator's successful download of a single copy of "Flypaper") or a related series of transactions (*i.e.*, the incremental downloads of portions of the movie from each identified IP address).  Litigating the cases will also involve common questions of fact and/or law regarding the existence of a swarm, the alleged downloads, plaintiff's ownership of the copyright, and the elements of infringement.  The fact that persons associated with the IP addresses may have individual defenses to plaintiff's claims does

ORDER OF DISMISSAL - 2

not change the fact that there will be some common question of law or fact: not all of the legal and factual issues must be identical as to all defendants. Patrick Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012).

Although the specific requirements of Rule 20 are met, the Court must also determine whether permissive joinder will "comport with the principles of fundamental fairness." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000). Factors relevant to this determination include the possible prejudice to any party, delay caused by joinder, the motives for joinder, the closeness of the relationship between the joined parties, notice to the parties, and the effect of joinder on jurisdictional issues. Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). In the Ninth Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

Jointly litigating the facts related to the swarm plaintiff has identified and the legal issues related to infringement is more efficient for plaintiff and the Court than litigating nineteen separate suits involving only one IP address each. In addition, the nature of the swarm and the BitTorrent protocol, with its many pieces and multiple sources, suggests that joint litigation may be necessary for plaintiff to substantiate its theory that defendants acted in concert to download copyrighted material, even if the segment downloaded from a particular defendant, considered alone, might not constitute copyright infringement. Defendants, on the other hand, gain no appreciable advantage through individual litigation: in either case, defendants will be able to offer individual defenses to the allegations. Nor does there appear to be any significant risk of liability by

ORDER OF DISMISSAL - 3

association.[1]  Jointly litigating these claims also allows defendants, many of whom will undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other defendants, and/or benefit from the participation of retained counsel.  The only potential advantage to severance appears to be the hope that plaintiff will give up its claims, no matter how meritorious, in the face of mounting costs.  If, as the Court is willing to assume at this stage in the proceeding, plaintiff's allegations are true and its copyright has been infringed, such a result is neither just nor fair.

The Court further finds that there is no indication that joinder will impact the Court's subject matter jurisdiction and that defendants' alleged participation in a knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint litigation even if defendants remained unaware of the identity of their fellow BitTorrent users.

The Court is, however, concerned about the impact that joinder has already had on the handling of this litigation and how that handling reflects on plaintiff's motives for amassing large groups of defendants.  To be clear, the Court finds that joinder under Rule 20 for purposes of prosecuting copyright infringement claims against members of a swarm in a single lawsuit can be appropriate.  Plaintiff, however, was not actually prosecuting this action.[2]  Despite receiving identifying information regarding some of the individuals associated with the IP addresses at issue, plaintiff failed to affect service, asserting that complications in obtaining subscriber information regarding every IP

---

[1] Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May 4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

[2] In response to the various orders to show cause issued in this and the related copyright infringement cases, counsel provided virtually identical memoranda and declarations, making it impossible to determine exactly what steps plaintiff took to prosecute this particular action or what communications were had with one or more of the nineteen Doe defendants.  The Court will therefore assume that counsel took the exact same steps and engaged in the same types of communications with regards to all of the pending cases.

ORDER OF DISMISSAL - 4

address somehow prevented it from naming any individual defendants. This approach to litigation has caused delay and raises all sorts of potential for abuse, as discussed more fully below. In addition, the failure to prosecute the actions suggests that the motive for joinder is not to promote the underlying goals of efficiency, justice, and expeditious resolution of the disputes, but rather to use the pendency of this litigation to obtain unilateral discovery regarding non-parties and to push for quick (and potentially unjustified) settlements.

In the circumstances of this litigation, the Court finds that joint litigation against numerous participants in a single swarm satisfies the specific requirements of Rule 20(a)(2) but that, as utilized by plaintiff, the joinder actually retarded the litigation and does not comport with the principles of fundamental fairness.

**B. Lack of Service**

Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The complaint was filed in the above-captioned matter on January 9, 2013. Plaintiff waited three weeks to request permission to conduct discovery from the internet service providers, which the Court granted eleven days later. No proofs of service were filed (as required by Rule 4(l)), and the Court ordered plaintiff to show cause why the case should not be dismissed for failure to timely serve.

Rather than address the service issue in its response, plaintiff simply states that it did not receive subscriber information from certain ISPs prior to the date on which the Court quashed the subpoenas and stayed the cases. Plaintiff does not assert that the ISPs were recalcitrant or otherwise refused to comply with the subpoena. On the existing record, it is impossible to conclude that plaintiff acted diligently in seeking and pursuing discovery in these matters or that good cause existed for the failure to comply with the

ORDER OF DISMISSAL - 5

120-day service deadline.

Just as importantly, plaintiff offers no justification for its failure to timely serve the defendants who have been identified.  Plaintiff opted to leave those individuals in limbo, knowing of this litigation but not yet a party.  Predictably, individuals who received notice of the lawsuit from their ISP began calling plaintiff's counsel who apparently referred them to a webpage of "Frequently Asked Questions," invited them to prove their innocence, and/or negotiated settlements.  In addition, counsel sent demand letters to a handful of defendants in these cases.  Despite the Court's instruction, plaintiff has not provided copies of the demand letters and has not summarized its oral offers of settlement.  The Court is therefore left to guess regarding the tenor and accuracy of statements made to potential defendants.  The little information available to the Court is not reassuring.

Counsel's "educational FAQ website" is found at www.fronteirlawgroup.wordpress.com and attached to this Order as Exhibit A.  The first question is "Why am I being sued?"  Of course, the individual reading the FAQs has not yet been sued, and plaintiff does nothing to clarify the procedural posture of the case.  An email string filed under seal in related cases shows that, even at the point of consummating a settlement, the individual mistakenly believed that a case had been filed against him or her.  The second question is about the justification for the settlement demand amount, but plaintiff has not provided any information regarding oral or written settlement demands in the above-captioned matters.  The FAQs themselves are silent on this issue, although they do mention the maximum statutory penalties and a $675,000 jury verdict in a copyright infringement action in the District of Massachusetts.  Plaintiff's advice regarding the association of counsel (the court will not appoint counsel in a civil suit) and the validity of possible defenses (failure to password protect and/or monitor the use of your internet connection may constitute negligence) is suspect.  Finally, plaintiff

ORDER OF DISMISSAL - 6

invites the individual reading the FAQs to provide evidence proving that he or she did not download "Flypaper."

When plaintiff sought permission to conduct discovery in this case, it represented the discovery as both limited and efficacious: by subpoenaing subscriber identification information from the ISPs, plaintiff would be able to pursue these lawsuits and protect its copyrights. It turns out, however, that identifying the account holder tells us very little about who actually downloaded "Flypaper" using that IP address. As one court noted, "it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call." In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012). In fact, it is less likely. Home wireless networks are ubiquitous, meaning that a single IP address can simultaneously support multiple computer devices throughout the home and, if not secured, additional devices operated by neighbors or passersby. Thus, the risk of false positives is very real. Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012). It is not clear that plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual contentions regarding an internet subscriber's infringing activities based solely on the fact that he or she pays the internet bill. Plaintiff seems to be aware of this problem and has refrained from identifying the Doe defendants more specifically even after it learns the name of the subscriber. Plaintiff does not, however, take the appropriate steps of returning to the Court to seek an extension of time in which to serve and permission to conduct additional discovery. Rather, plaintiff demands that the subscriber prove he or she did not download "Flypaper." Therein lies the rub. Plaintiff has effectively obtained access to unrepresented individuals and parleyed that access into open-ended and unlimited discovery, despite the very narrow discovery order entered by the Court.

In this context, the 120-day service deadline is the only thing that limits

ORDER OF DISMISSAL - 7

plaintiff's unsanctioned discovery expedition. If plaintiff feels it has enough information to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an IP address, it should serve the complaint and initiate litigation subject to the limitations imposed by the rules of civil procedure. If, on the other hand, plaintiff would have trouble justifying a factual contention that the internet subscriber must, by virtue of that fact, be the downloader, it should seek an extension of the service deadline by explaining why it was unable to obtain the information in a timely manner and identifying steps to be taken that would allow litigation to begin. If those steps include additional discovery, further permission of the Court would be necessary. In short, plaintiff must actually prosecute the claims it has asserted. Instead, plaintiff's litigation strategy seems to be to use the mere pendency of this action to create a period of time in which it can scare subscribers into settlement as the only means of avoiding both litigation costs and harsh statutory penalties. The limited communications disclosed to the Court in this and other related cases show that plaintiff makes every effort to "educate" the subscriber regarding the statutory penalties he or she faces. Coupled with the clear implication that evidence of IP address ownership is legally sufficient to establish copyright infringement and the demand that the subscriber prove his or her innocence, it is not surprising that subscribers – whether guilty or not – may choose to settle. While the risk of improvident settlements and overreaching cannot be eradicated, the Court will not allow plaintiff to pick and choose the procedural rules it likes while ignoring deadlines and discovery limitations. Absent extraordinary and unforeseeable circumstances, the service deadline will be strictly enforced in order to reduce the risk of overreaching.

1        For all of the foregoing reasons, the above-captioned matters are
DISMISSED for improper joinder and failure to timely serve.  The Court need not reach issues regarding ownership of the copyright.

        DATED this 5th day of August, 2013.

                              *[signature]*
                              Robert S. Lasnik
                              United States District Judge

ORDER OF DISMISSAL - 9